UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE POMMERVILLE, on behalf of Debra Ragland (deceased),<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. CV 16-4104 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On June 9, 2016, JoAnne Pommerville ("plaintiff") filed a Complaint on behalf of her late daughter, Debra Ragland ("claimant"), seeking review of the Commissioner of Social Security's denial of claimant's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 30, 2016 Case Management Order ¶ 5.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 2, 2012, the claimant filed applications for Supplemental Security Income and Disability Insurance Benefits alleging disability beginning on March 8, 2008, due to neck problems after surgery and a sciatic nerve problem. (Administrative Record ("AR") 14, 156, 158, 183). The claimant passed away on November 27, 2013. (AR 14, 543). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel on behalf of the claimant) and a vocational expert on September 10, 2014. (AR 25-42).

On September 26, 2014, the ALJ determined that the claimant was not disabled through the date of her death. (AR 14-20). Specifically, the ALJ found that prior to the claimant's death: (1) the claimant suffered from the following severe impairments: chronic pain syndrome, degenerative disc disease of the lumbar and cervical spines, and carpal tunnel syndrome (AR 16-17); (2) the claimant's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 17); (3) the claimant retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[1] (AR 18); (4) the claimant was capable of performing past relevant work as a floral retail manager (AR 19); and (5) the claimant's statements regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 18).

---

[1]The ALJ determined that the claimant could (i) lift 10 pounds frequently and 20 pounds occasionally; (ii) stand six hours of an eight-hour day; (iii) occasionally bend/stoop; and (iv) do frequent bilateral fine and gross manipulation. (AR 18).

On April 13, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

|   |   |   |
|---|---|---|
| 1 | (5) | Does the claimant's residual functional capacity, when |
| 2 |  | considered with the claimant's age, education, and work |
| 3 |  | experience, allow the claimant to adjust to other work that |
| 4 |  | exists in significant numbers in the national economy?  If so, |
| 5 |  | the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

### B.  Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning

with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted); see also Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ must provide "accurate and logical bridge" between evidence and conclusion that claimant is not disabled so reviewing court "may assess the validity of the agency's ultimate findings") (citation and quotation marks omitted); see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based").

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" Id. at 882 (citation omitted). In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination when viewed in the context of the record as a whole; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently

conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.  DISCUSSION

Plaintiff contends, in part, that the ALJ failed properly to consider her hearing testimony about the claimant, and failed to provide germane reasons for rejecting the competent lay testimony. (Plaintiff's Motion at 11-22).  The Court agrees.  As the Court cannot confidently conclude that the ALJ's errors were harmless, a remand for additional investigation and/or explanation is appropriate.

### A.  Pertinent Facts

The ALJ's decision summarized plaintiff's entire hearing testimony as follows:  "The claimant's mother [plaintiff] testified that the claimant had problems with back and neck pain, pain in her hands, and depression.  She testified that the claimant was working a couple of months before she died." (AR 18).

### B.  Pertinent Law

Lay witness testimony about a claimant's symptoms or how an impairment impacts the claimant's ability to work is competent evidence that "*cannot* be disregarded without comment." Molina, 674 F.3d at 1114 (citation and quotation marks omitted; emphasis in original).  An ALJ "must give reasons that are germane to each witness" for rejecting competent lay witness testimony. Id. (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  An ALJ is not always required to discuss lay testimony on an "individualized, witness-by-witness basis." Id.  For instance, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citing Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009)).

///

When an ALJ disregards or fails to provide germane reasons for rejecting competent lay evidence, reversal is not warranted if the ALJ's error was harmless. Id. at 1122 (citations omitted). Such errors may be deemed harmless if a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [lay evidence], could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56). For instance, an ALJ's failure to provide germane reasons for rejecting competent lay testimony regarding a claimant's specific limitations may be harmless error to the extent the ALJ rejected other lay testimony regarding the same limitations based on well-supported reasons that apply with equal force to the testimony the ALJ improperly rejected. Molina, 674 F.3d at 1121-22 (citations omitted).

### C. Analysis

Here, the ALJ's consideration of plaintiff's lay testimony was deficient in at least two material respects.

First, as plaintiff pointed out, the ALJ's decision failed to address a significant portion of plaintiff's hearing testimony – specifically, plaintiff's testimony regarding the manner in which the claimant's impairments impacted her ability to work. See generally Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which support non-disability) (citations omitted); Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record"). For example, the ALJ's summary did not address plaintiff's testimony that while working for plaintiff in 2009, the claimant experienced such severe back pain "at least three times a week" that she needed to lie down in the back of plaintiff's van for "[a]nywhere from 30 minutes to an hour" or the claimant "would just go home." (AR 36-37). The decision also does not address plaintiff's testimony that "at least once or twice a week" she personally saw that the claimant "[had] days where she

just couldn't get to work [and] couldn't even get out of bed for [the] day[.]" (AR 37). The ALJ's silent disregard of such competent, and probative lay testimony was error.

Second, the ALJ apparently gave no reasons at all for disregarding any of plaintiff's lay testimony. See, e.g., Molina, 674 F.3d at 1114-15 (noting "ALJ erred in failing to explain her reasons for disregarding [competent] lay witness testimony, either individually or in the aggregate"). While the record, in fact, may contain several germane reasons for rejecting plaintiff's lay testimony, since the ALJ did not invoke any such grounds with sufficient specificity or clarity, this Court may not affirm the ALJ's decision based on such potential reasons.

The Court cannot confidently conclude that the foregoing errors were harmless. For example, the vocational expert testified, in part, that if a hypothetical individual with the same characteristics as the claimant were more functionally restricted, the claimant would be unable to perform any past relevant work. (AR 40). As noted above, plaintiff's testimony suggests that the claimant's functioning was significantly more limited than the ALJ's residual functional capacity assessment reflects. Thus, if such testimony were fully credited, a reasonable ALJ could very well have concluded at step four that the claimant was not able to perform her past relevant work. In addition, the vocational expert also testified there would be other work at the sedentary exertion level that a hypothetical individual like the claimant could do even with additional functional restrictions. (AR 40-41). Nonetheless, if fully credited, plaintiff's testimony suggests that due to her impairments, the claimant might need to take significant unscheduled breaks during a typical workday, and possibly be absent from work at least one or two days each week. Hence this Court cannot confidently conclude that a reasonable ALJ would not have reached a different disability determination even if the ALJ had proceeded to step five. Cf., e.g., Mahmood v. Commissioner of Social Security Administration, 61 F. Supp. 3d 982, 993 (D. Or. 2014) (noting

vocational expert opinion that "competitive employment would be precluded" to the extent a person "was absent from work for two or days a month," "work[ed] at a 75 percent pace compared to that of an average employee," or "needed extra rest breaks each day") (citation omitted); Russell v. Colvin, 9 F. Supp. 3d 1168, 1187 (D. Or. 2014) (Commissioner did not satisfy burden at step five to prove there was other work in the national economy claimant could perform, in part, where vocational expert testified that hypothetical claimant "would be unemployable" if the claimant were "absent from work two days per month" or "unavailable ten percent or more of the time, either not at work or if she had to lie down").

      Defendant argues the ALJ's errors were harmless essentially because the ALJ had already expressed "adequate reasons for rejecting the claimant's [substantively identical] testimony." (Defendant's Motion at 15-16). An ALJ's failure to give germane reasons for rejecting competent lay testimony may be harmless to the extent (1) the lay witness described the same, specific limitations as the claimant did in his or her own testimony; (2) the ALJ provided well-supported and valid (*i.e.*, clear and convincing) reasons for rejecting the claimant's own testimony regarding the specific limitations; and (3) the reasons the ALJ articulated for rejecting the claimant's testimony regarding such limitations "apply with equal force to the lay testimony" the ALJ failed to address. See Molina, 674 F.3d at 1121-22 (citations omitted); see also Brown-Hunter, 806 F.3d at 488-89 (ALJ must provide "specific, clear, and convincing reasons" for rejecting claimant statements regarding intensity, persistence, and limiting effects of symptoms). In such cases, an ALJ's decision must be affirmed even if the ALJ did not "clearly link" rejection of the specific lay testimony to the reasons expressed for rejecting the claimant's similar testimony. Molina, 674 F.3d at 1121 (citation omitted). Here, however, the record does not support finding the ALJ's errors harmless under such a theory.

///

First, plaintiff and the claimant did not, as defendant asserts (Defendants' Motion at 15, 17), provide "substantively identical" statements regarding any impairment-related limitations addressed in the ALJ's decision. For example, the ALJ mostly discredited the claimant's statements with respect to broad categories of subjective symptoms – *i.e.*, "back pain and mental symptoms," "complaints of severe pain and debilitating anxiety and depression," "pain and dysfunction," and "pain [that] was disproportionate" (AR 18-19) – which did not identify with sufficient clarity any subjective statement regarding a specific functional limitation the ALJ intended to reject. In contrast, the plaintiff testified about her personal observations of the specific impact the claimant's impairment-related symptoms had on the claimant's day-to-day functioning. (AR 37).

Second, in any event, it does not appear that the ALJ provided clear and convincing reasons for finding the claimant's statements "not entirely credible." For example, the ALJ wrote that the claimant's "complaints of severe pain and debilitating anxiety and depression" were "less than fully credible" in light of evidence that claimant missed an unspecified number of "scheduled appointments" and engaged in "significant drug-seeking behavior." (AR 18-19). Nonetheless, the ALJ did not link any statement by the claimant about a specific functional limitation to particular parts of the record that undermined the credibility of such statement. The same is true for the ALJ's conclusory statements that the treating physician found unspecified pain complaints "disproportionate," and that "the claimant's [poor] work history . . . suggests that the claimant's unemployment after the alleged onset date may not have been due to medical impairments[.]" (AR 19). Without more, this Court is unable adequately to determine whether the ALJ discredited the claimant's specific subjective complaints on permissible grounds. See, e.g., Brown-Hunter, 806 F.3d at 494 (legal error where ALJ fails to link claimant's testimony ALJ found not credible to particular parts of the record supporting non-credibility determination) (citation omitted); Robbins, 466 F.3d at

885 (Where ALJ "did not make a legally sufficient adverse credibility finding with regard to [claimant's] own testimony, [the court] cannot say with respect to [lay witness'] testimony that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'") (quoting Stout, 454 F.3d at 1056).

The ALJ also wrote that "[a]lthough the claimant complained of back pain and was in pain management, she had no surgery and very little therapy other than medications[,]" which "suggests that the claimant's condition was manageable with medication alone and did not cause as much pain and dysfunction as [claimant] alleged[.]" (AR 19). Nonetheless, plaintiff testified at the hearing that at some point the claimant had undergone surgery for her neck. (AR 33). The medical records reflect that in 2011 the claimant was treated for lumbar radiculopathy with epidural injections on one occasion, and given medial branch blocks for thoracolumbar spondylosis on two others. (AR 531-33). Moreover, examination notes from the claimant's treating physician reflect, in pertinent part, that the medication prescribed to the claimant had "not changed [claimant's] pain," did not seem to "last long enough for [the claimant's] pain," and/or relieved the claimant's pain for only four hours, and also that even "with medications" the claimant's pain, at times, remained at a level of five to seven (on a severity scale of one to ten). (AR 304, 308, 441, 445, 449, 453, 457, 461, 465). The ALJ's apparent incorrect characterization of the medical evidence calls into question the validity of both the ALJ's credibility evaluation and the ALJ's decision as a whole. See, e.g., Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination).

Finally, even so, the reasons the ALJ articulated for discrediting the claimant's subjective complaints do not apply "with equal force" to plaintiff's lay

testimony about the claimant.  For example, evidence of drug-seeking behavior by the claimant arguably would support inferences that the claimant had exaggerated the severity of her pain during doctor visits in order to obtain more prescription drugs than necessary.  Nonetheless, evidence that *the claimant* engaged in drug-seeking behavior with her doctors raises no questions about *plaintiff's* overall veracity as a witness, much less provide a germane reason for rejecting testimony regarding plaintiff's personal observations of specific conduct in which the claimant engaged (*i.e.*, taking unscheduled breaks or going home when the claimant told plaintiff "she just couldn't take [the pain] anymore[,]" or that plaintiff would "see" that the claimant's inability to get out of bed/get to work "at least once or twice a week") under entirely different circumstances (*i.e.*, while the claimant was working under plaintiff's supervision).  (AR 36-37).

      Similarly, the ALJ discredited the claimant's overall subjective statements, in part, due to "no evidence of any medical treatment in the record until 2011," and unexplained failure to seek or receive treatment commensurate with the alleged severity of the claimant's subjective complaints.  (AR 18-19).  Nonetheless, an ALJ may not discredit otherwise competent *lay* statements solely because they are "*not supported* by medical evidence in the record."  Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (emphasis added) (citing Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)); Massey v. Commissioner of Social Security Administration, 400 Fed. Appx. 192, 194 (9th Cir. 2010) ("[An] ALJ may not reject lay testimony solely because it is not supported by objective medical evidence.") (citing id.).

///
///
///
///
///

## V. CONCLUSION[2]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[3]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 15, 2017

                                                     /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE

---

[2] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[3] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).